**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| 84 LUMBER COMPANY, L.P. | ) | |
| | ) | Civil Action No. 11-548 |
| Plaintiff/Counter-Defendant | ) | |
| | ) | Magistrate Judge Lisa Pupo |
| v. | ) | Lenihan |
| | ) | |
| GREGORY MORTIMER BUILDERS, | ) | ECF No. 225 |
| *et al.* | ) | |
| Defendants/Counter-Plaintiffs | ) | |


**MEMORANDUM OPINION**

**ON DEFENDANT'S MOTION TO RECONSIDER**


**I.      SUMMATION**

For the reasons set forth below, the Court will deny Defendant's Motion to Reconsider

Memorandum Opinion on Contractual Damage Limitations ("Defendant's Motion to

Reconsider") (ECF No. 225), as Defendant (collectively referring herein to Defendant

Gregory Mortimer and affiliate Defendants/Counter-Plaintiffs) does not meet the standard

required for grant of a Motion to Reconsider.  In so holding, the Court briefly observes that it

(1) expressly did not determine limitations on contractual damages in this action to be

*governed by* the statutory provisions of the Uniform Commercial Code ("the UCC"); (2)

properly analyzed the case under appropriate relevant authority and analogous law, including

the general law merchant and decisions applying principles of law and commerce underlying

the UCC to both UCC and non-UCC actions; (3) considered, but rejected for reasons fully

articulated in its October 11, 2016 Memorandum Opinion on Contractual Damage

Limitations ("the Memorandum Opinion") (ECF No. 214), Defendant's view of the

application of the Fourth Circuit's determination of South Carolina law in Waters v. Massey-

Ferguson, Inc., 775 F.2d 587 (4th Cir. 1985) to the case *sub judice*; and (4) did not render a

premature determination of potential liability for fraudulent inducement/misrepresentation.

Finally, although the request for "clarify[ication]" set forth in Defendant's Supplemental

Memorandum of Law in Support of Motion to Reconsider ("Defendant's Supplemental

Memo") (ECF No. 229) at 2, is somewhat misplaced in a Motion to Reconsider, the Court

will reiterate for the record that it meant what it said, *i.e.*, "the contractual consequential

damage limitation provisions at issue stand as to those claims encompassed by their

language, *i.e.*, those related to 'defects in workmanship or materials' and the damages

flowing therefrom". *See* ECF No. 229 at 2 (quoting ECF No. 214 at 22). *See also* ECF No.

229 at 2-3 (observing the Court's Pretrial Order reference to the "establishment and valuation

of permissible damages for alleged deficiencies/delays in construction work product to

standards warranted . . . which claims are subject to the consequential damage limitations

provisions"). With regard to Defendant's assertion that newly-asserted theories of liability -

stemming from factual allegations of Plaintiff's failure to "provide competent supervision . .

., proper insurance . . . and a site superintendent" - provide grounds for a holding that

"paragraph 15's consequential damages limitation does not apply to [Defendant]'s claims for

breach of contractual obligations outside the scope of paragraph 15's warranty", ECF No.

229 at 3, the Court must disagree.

## II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY

The extensively documented factual and legal history in this case arising from disputes

between the parties with regard to (a) construction material purchases and (b) sub-contracted

construction of housing in Defendants' multi-duplex residential developments – Timberlake

Village (hereafter "Timberlake") and Cedar Creek – located near Deep Creek Lake, in

Garrett County, Maryland was again summarized by this Court in its Memorandum Opinion.

*See* ECF No. 214.  That Opinion held as follows:

> For the reasons set forth more fully below, the Court predicts and concludes
> that, under Maryland law reflecting accord with the general law merchant, the
> parties' contractual language precluding "any consequential, indirect, exemplary
> or punitive damages of any type" is an independent provision.  And thus under
> Maryland law, absent unconscionability, a contractual prohibition against
> consequential damages remains in effect even where the parties' "repair or
> replacement" provision may fail of its essential purpose.  *See* Patapsco Designs,
> Inc. v. Dominion Wireless, Inc., 276 F.Supp.2d 472 (D. Md. 2003) (predicting
> that under Maryland law, as reflected in adoption of UCC, limitation on damages
> did not fail even if repair and replacement provision failed of essential purpose;
> rather, damage limitation was freely contracted independent allocation of risk
> between business parties and remained subject to unconscionability standard).  *Cf.*
> Waters v. Massey-Ferguson, Inc., 775 F.2d 587 (4th Cir. 1985) (predicting that
> under South Carolina law and particular circumstances of contract on case-by-
> case basis, consequential damage limitation did not extend to long-term damages
> where reasonable repair and replacement was not made by manufacturer and
> provision failed of essential purpose).  Because the contractual damage limitation
> provisions at issue were not unconscionable under Maryland law, and because
> they are not forfeited under any of Defendants' alternative rationales, the
> limitation provisions remain enforceable as to those contract claims encompassed
> by the parties' clear language, *i.e.*, they limit damages related to/flowing from
> "defects in workmanship or materials."  *See* discussion, *infra* (addressing claims
> of fraudulent inducement, ratification, and damages proximately caused by
> specific misrepresentation(s)).

ECF No. 214 at 1-2.

Currently pending before this Court is Defendant's Motion to Reconsider (ECF No. 225)

requesting reconsideration of the Court's determination that the parties' contractual limitation

on damages is an independent provision from, and thus - absent other basis for forfeiture not met by Defendant, *see supra* and ECF No. 214 – stands regardless of a failure of essential purpose of the contract's "repair or replacement" provision.  Defendant moved for reconsideration on grounds that (1) "the UCC does not apply" and the Court should not have relied on Patapsco Designs, Inc. v. Dominion Wireless, Inc., 276 F.Supp.2d 472 (D. Md. 2003) which presented analysis of UCC provisions; (2) "this case is factually and legally analogous to Waters", *supra*; and (3) it was "premature to limit fraud damages" where the party now alleges he did not discover the "fraud fully until litigation commenced in this case".  *See* Defendant's Memorandum of Law In Support of Motion to Reconsider ("Defendant's Memo in Support") (ECF No. 226).

III.     **APPLICABLE STANDARD ON MOTION FOR RECONSIDERATION**

As duly noted by Defendant, the purpose of a motion to reconsider under Fed. R. Civ. P. 54(b) is to correct manifest errors of law or fact or to present newly discovered evidence. A motion for reconsideration [Rule 54(b)] must therefore rely on one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  Foster v. Westchester Fire Ins. Co., 2012 WL 2402895, at *4 (W.D. Pa. June 26, 2012).  *See also* Plaintiff's Brief in Opposition to Defendant's Motion to Reconsider ("Plaintiff's Brief in Opposition") (ECF No. 232) at 2-3 (citing *Broadvox-CLEC, LLC v. AT&T Corp.*, 98 F. Supp. 3d 839 (D. Md. 2015)); id. (further noting that "[m]ere disagreement with a court's rulings will not support granting a motion for reconsideration) (citing *Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612 (D. Md. 2013)).[1]

---

[1] The Court appreciates the good work and craftsmanship of the parties' briefing on this Motion, and the sometimes original and engaging use of language and simile, as with, *e.g.*, Plaintiff's

## IV.    ANALYSIS

As expressly discussed at some length in the Memorandum Opinion, the Court did not

determine this non-UCC case[2] as governed by the provisions of the UCC and, to the contrary,

explained that it looked to "the broader presumption underlying and referenced in the analysis of

relevant cases decided under the UCC (*i.e.* a State's adoption thereof) . . . that the failure of

essential purpose of a repair or replacement provision does not invalidate a proscription against

consequential damages because 'sophisticated business entities' may want to allocate unknown

or undeterminable risks and 'should be free to allocate [them] as desired, provided the waiver is

not unconscionable.'" *See* ECF No. 214 at 9-10 (citations omitted). *See also* Plaintiff's Brief in

Opposition, ECF No. 232 at 3-4.[3] The Court concurs with Plaintiff's response to Defendant's

contention that because other provisions of the UCC are inapplicable to the analysis of this

contractual commercial transaction, the UCC should not be consulted.[4] It further observes that

Defendant's assertion that <u>Patapsco</u>, *supra*, "has no relevance here" because it addressed the

---

illustration of evidence of error. *See* Plaintiff's Brief in Opposition (explaining "dead wrong" by citation to *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 1995 U.S. App. LEXIS 24802, (4th Cir. 1995) (*quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

[2] *See* ECF No. 214 at 9 ("This case does not arise under the Uniform Commercial Code ("UCC"), but is, as Defendants note, a mixed goods and services case with a primary services component.").

[3] *Cf.* Defendant's Memo in Support (ECF No. 226) at 2-3 (asserting that because the UCC "alters the common law" the Court must not apply it here).

[4] See ECF No. 232 at 8-10 ("Defendants are attempting to persuade the Court that its analysis of the UCC's provisions governing consequential damages is as inapplicable to the instant issue as the UCC's statute of limitations or perfect tender rule may be. This is the legal equivalent of throwing the wheat out with the chaff . . ."). *Cf.* Defendant's Memo in Support (ECF No. 226) at 4.

interplay of two UCC provisions patently ignores the analysis of <u>Patapsco</u> provided in the

Memorandum Opinion.  *Compare* Defendant's Brief in Support (ECF No. 226) at 3-4 *with*

Memorandum Opinion (ECF No. 214) at 9-10; *see also* Plaintiff's Brief in Opposition (ECF No.

232) at 8 (noting <u>Patapsco</u>'s discussion of contractual risk allocation between sophisticated

commercial parties); <u>id.</u> at 10-11 (continued discussion of relevance of business transaction free

risk allocation analysis).

As also discussed at length in the Memorandum Opinion, the Court carefully considered

Defendant's well-presented analysis of *Waters v.Massey-Ferguson, Inc.*, 775 F.2d 587 (4th Cir.

1985).  And in doing so, the Court noted that the Fourth Circuit explicitly limited its holding to a

prediction of *South Carolina* law and to the specific contractual language before it, stating to the

contrary that it "advance[d] no general opinions about the enforceability of another warranty."

*See* ECF No. 214 at 11-12 (citing *Waters*, 775 F.2d 587, 593).  The Memorandum Opinion then

proceeded to distinguish *Waters* and to weigh its decision again the other law which comprised

the Court's extensive research and analysis.  <u>Id</u>.  The Court was not unobservant of Defendant's

subsequent introduction of well-phrased testimonial evidence during the Bench Trial held on

November 1-2, 2016[5] in support of its view of *Waters* and desire to further develop a supportive

factual record, as well as expand related arguments in its more recent briefing.  The Court must,

however, continue to disagree with Defendant's assertions as to the comparability, and hence the

import, of *Waters*.[6]

---

[5] *See generally* ECF No. 230-231 (Notices of Filing of Official Transcripts).

[6] Regarding Defendant's argument distinguishing the contractual damage limitations language of
Paragraph 15 from that of <u>Waters</u> and presenting his alternative analysis, the Court observes (in
addition to "asked and answered", *see supra*) that Defendant cited the case he now asserts this
Court "incorrectly relied on".  *See* Defendant's Memo in Support,  ECF No. 226 at 8 (citing

The Memorandum Opinion concluded that, under Maryland law, the party to a contract

*must* elect rescission or ratification at the time fraud in the inducement is discovered, and that

one failing to rescind is held to have ratified that contract, and therefore "retains its right to

damages for deceit but is precluded from subsequently asserting fraudulent-inducement

rescission." *See* ECF No. 214 at 17-18 (citing and quoting Sonnenberg v, Sec, Mgmt. Corp., 599

Dowty Commc'ns Inc. v. Novatel Computer Sys. Corp., 817 F.Supp. 581 (D. Md. 1992)). *See also* ECF No. 214 at 12-13 (analogizing and quoting Dowty in discussion of the contractrual creation of "a two-tiered limitation on [seller]'s potential liability" with the first being repair and replacement and, if ineffective, the second operating to preclude "incidental, consequential [and other] damages"). More significantly, the Court observes that Plaintiff's drafting the scope of Paragraph 15 to "any claim under this Paragraph" certainly has significance as to the extent of damage limitations afforded, *see supra*, but does not render it "inseparable" from the repair and replacement provision. *Cf.* ECF No. 226 at 8-9.

That said, had Plaintiff's contract been as artfully and carefully written as its current pleadings, this action would no doubt have been less protracted and resolved at less expense to the parties and this Court. And given an assertion in Plaintiff's Brief in Opposition, the Court will redirect Plaintiff (not for the first time), to the Court's previous determination as to the scope of Paragraph 15. *Compare* ECF No. 232 at 17 (asserting that the language "in no event" effectively rendered "the limitation of damages" provisions of Paragraph 15 "applicable to the entire Agreement"), id. at 21-23 *with* Memorandum Opinion, ECF No. 214, at 2, 12-13, 22.

Finally, the Court again notes that the Memorandum Opinion addressed contractual damage limitations, and their applicability to breach of contract claims. *See* ECF No. 214 at 2 ("[T]he limitation provisions remain enforceable *as to those contract claims* encompassed by the parties' clear language . . . .") (emphasis added). That is, the Memorandum Opinion addressed the issues raised for and in the pertinent briefing. It was not revisiting or revising prior determinations, such as its prior denial of Plaintiff's Damages Motion (ECF No. 144) on grounds including rejection of Plaintiff's contention that "parties to whom Plaintiff may be liable under the pending claims are not entitled to consequential, exemplary, punitive, or compensatory damages . . .". *See* Memorandum Opinion on the Parties' Multiple Motions and Cross-Motions for Summary Judgment (ECF No. 166 at 26-27); id. at n. 26 (contrasting Plaintiff's Damages Motion, "asserting that because the Subcontract Agreements state that 'in no event' is 84 Lumber liable for any damages other than repair or replacement costs, Defendants are constrained from other damages under fraud or any other civil theory of liability", with ECF No. 166's discussion of interpretation and "non-applicability to remaining potential tort liabilities"); id. (" The Court again directs the parties to the actual language of Paragraph 15, which expressly limits "liability hereunder" to the "extent of 84's negligence" and its obligations to "repair or replacement of any defective or nonconforming [w]ork" and precludes "any consequential, indirect, exemplary or punitive damages of any type in connection with any claim under this paragraph." ).

A.2d 820, 826 (Md. 1992)); id. at 18-19 (providing further citations to relevant cases, including Lustein Chev. v. Cadeaux, 308 A.2d 747 (Md. App. 1973)). *Cf.* ECF No. 226 at 9 ("Mortimer agrees that a party *may* elect rescission or ratification at the time fraud is discovered . . . ."). As Defendant notes, where the party has "proceeded with the contract", the injured party is allowed "the opportunity to prove . . . consequential damages" *proximately caused* by the fraud itself. *See* id. at 10 (citing Sonnenberg). Such damages are distinguished from those stemming from entry into a ratified contract. *See* ECF No. 214 at 17-19; *see also* Plaintiff's Brief in Opposition (ECF No. 232) at 18 (citing Sonnenberg). *Compare* Defendant's Memo in Support (ECF No. 226) at 10 (referencing Defendant's entry into contracts with 84 Lumber).

Defendant's assertion that the Court prematurely limited his right to damages for deceit is in error. To the contrary, the Court carefully explicated, with citation to both the relevant law and the evidentiary record of *Defendant's own factual assertions*, the specific bases for each claim of fraudulent inducement/misrepresentation and the evidence of when Defendant knew or clearly should have known of the fraud on which his subsequent counter-claims were made (in litigation also making contract claims). *See* ECF No. 214 at 21-22 (parsing, with reference to previous factually-detailed footnotes, Defendant's basis for alleged fraudulent inducement). Defendant cannot now be heard to venture assertions that he did not "fully" understand the fraud until some latter stage of the litigation as a basis for exempting himself from the damage limitation provisions of contracts which he ongoingly ratified. *See* ECF No. 214 at 20 ("[H]aving discovered any misrepresentation comprising fraudulent inducement, Defendants could not allow the continuation of contract execution and hold in their pocket the position that 84 Lumber had now effectively become a guarantor."); id. at 20, n. 19 ("Were there any question as to whether Defendants are deemed to have ratified . . . ., it is beyond peradventure that they

have ratified said contracts by asserting breach of contract claims in this action. Defendants have

made no *ad damnum* request for rescission . . . .").[7] The Court concurs, however, that should a

claim of fraudulent inducement survive (on sufficient evidence as to its elements) to further trial,

the determination of what, if any, losses were proximately caused by that misrepresentation itself

will remain to be determined at that time. *See* ECF No. 226 at 11; ECF No. 214 at 19-20 ("[T]o

the extent that Defendants may be able to proffer *prima facie* evidence of fraud in the

inducement as to any of the Subcontract Agreements, where they are deemed by Maryland law to

have ratified each of the contracts by failing to repudiate them upon discovery/reasonable

knowledge of the alleged fraud, they are limited to the damages proximately flowing from the

purported fraudulent misrepresentations themselves (and not those from failure/delay in

performance of contractual undertakings").

   Finally, in its Supplemental Memorandum of Law in Support of Motion to Reconsider

("Defendant's Supplemental Memo") (ECF No. 229), Defendant raised an additional contention

and request: that the Court issue a holding, assertedly to "clarify" that the consequential

limitation damages provision of Paragraph 15 would not apply to "claims for breach of

contractual obligations outside the scope of" that paragraph's warranty. ECF No. 229 at 3

(identifying theories of liability stemming from allegations of Plaintiff's failure to "provide

competent supervision . . ., proper insurance . . . and a site superintendent" as such claims).

   As noted above, the Memorandum Opinion concluded that "the contractual consequential

damage limitation provisions at issue stand as to those claims encompassed by their language,

*i.e.*, those related to 'defects in workmanship or materials' and the damages flowing therefrom".

---

[7] *Cf.* Plaintiff's Brief in Opposition (ECF No. 232) at 18 ("When a party to a contract discovers a fraud has been perpetrated upon him, he is put to a prompt election . . . .") (quoting Wolin v. Zenith Homes, Inc., 146 A.2d 197 (Md. 1959)).

*See* ECF No. 214 at 22.[8]  The Court first observes that pleadings and procedures serve important

purposes, perhaps increasingly so as cases extended over years and docket numbers progress into

the hundreds.  *Cf.* Plaintiff's Brief in Opposition (ECF No. 232) at 20 (noting that the

supervisory and insurance breaches now alleged were not included in Defendant's

counterclaims).  Even setting aside the question of waiver these five (5) litigious years, the Court

observes that Defendant's Supplemental Memo asserts only that: Defendant "include[s] these

claims for breach" and that a failure to provide insurance or supervise is not a "defect in

workmanship or materials."  ECF No. 229 at 4.  Nor, of course, is a failure to provide insurance

or supervise a harm. Setting aside the question of evidence, the Court notes that Defendant –

even at this stage of these proceedings - provides no specification of injury.  None.   A Court

continuing to indulge Defendant's request to consider whether a claim falls outside the

contractual *damage limitations* of Paragraph 15 must address what the factual underpinnings of

such claim might be; and in doing so, it appears clear that - assuming any breach of contract as

now alleged – the nexus between it and any possible harm to Defendant under the contracts

would be a defect/delay in materials or workmanship that could have been prevented,

ameliorated, or cured.  That is, Paragraph 15's limitation of damages addresses – as contractual

damage limitations do - the harm for which Plaintiff is liable, not the conduct.  As Defendant has

specified no new breach of contract claim outside the scope of Paragraph 15, the Court will not

issue an advisory order and therefore need not render a determination of waiver.

---

[8] *See also* ECF No. 229 at 2-3 (observing the Court's Pretrial Order reference to the
"establishment and valuation of permissible damages for alleged deficiencies/delays in
construction work product to standards warranted . . . which claims are subject to the
consequential damage limitations provisions").  *Cf. supra*.

## V.     CONCLUSION

For the reasons set forth above, the Court will deny by Order of even date herewith Defendant's Motion for Reconsideration (ECF No. 225) for failure to meet the applicable standard.

Defendant expressly requested – for purposes of preservation of rights on appeal - that, should the Court deny reconsideration, it issue an appropriate Order formally setting forth its Memorandum Opinion conclusions on the (1) independence of the contractual consequential damage and "repair and replace" provisions and (2) bench trial determination of damages proximately caused by a surviving fraud claim, if any.  *See* Defendant's Memo in Support (ECF No. 226) at 11. The appropriate Order will be issued.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

Dated:  January 3, 2017

cc: All counsel of record