IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 84 LUMBER COMPANY, L.P. ) | |
| ) | Civil Action No. 11-548 |
| Plaintiff/Counter-Defendant ) | |
| ) | Magistrate Judge Lisa Pupo |
| v. ) | Lenihan |
| ) | |
| GREGORY MORTIMER BUILDERS, ) | ECF No. 271 |
| *et al.* ) | |
| Defendants/Counter-Plaintiffs ) | |

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE TESTIMONY AND EVIDENCE OF DEFENDANTS' DIRECT AND INCIDENTAL DAMAGES

### I. SUMMATION

Plaintiff has filed a Motion in Limine to preclude testimony and evidence of Defendants' direct and incidental damages, ECF No. 271 ("Plaintiff's Motion on Certain Damages"). For the reasons set forth more fully below, the Court will grant the Motion as to those damages listed in Defendant's June 15, 2017 Second Amended Pretrial Statement, ECF No. 268 ("Defendants' Second APS"), as "B. Additional Direct and Incidental Damages" items 2 through 5. Said damages constitute loan interest payments, property taxes and "other carrying costs", and are therefore within the contractual limitations of damage provisions for which the Court has provided detailed analysis and express holdings on more than one occasion.

The Court will also grant said Motion as to the damages listed in Defendants' Second APS, ECF No. 268, as "C. Attorney's Fees" in excess of $500,000 and "to be determined", as the case presents for bench trial no component of entitlement to attorney's fees. Defendants' assert that "there is no need for a pretrial ruling on this issue", despite their inclusion of attorney's fees in their Second APS asserted "Damages" and "Legal Issues", because Defendants will decide whether to move for attorney's fees following final judgment. Defendants' Opposition to 84 Lumber Company, L.P.'s Motion in Limine to Preclude Testimony and Evidence of Defendants' Direct and Incidental Damages ("Defendants' Opposition to Motion on Certain Damages"), ECF No. 279 at 1, 3.

Finally, the Court will deny said Motion as to the damages listed as "B.1 Overcharges on Timberlake 13" as the parties have expressed agreement that—although Defendants have filed five separate Counts for breach of construction Subcontracts on five units and no Count with regard to their Subcontract for Timberlake Unit #13—a claim for damages related to Unit #13 is properly before the Court under Count IX of Defendants' Second Amended Counterclaim (ECF No. 44) for improper billings under an 84 Lumber Commercial Credit Application form dated May 9, 1997 (the "1997 CCA"). *Cf.* Memorandum Opinion on the Parties Multiple Motions and Cross-Motions for Summary Judgment, ECF No. 166, at 11, n. 18.[1]

---

[1] During both the August 17, 2017 and July 2, 2016 Status Conferences, damages alleged with regard to Unit #13 were somewhat ambiguously identified as arising from an alleged CCA overcharge on Unit #13 for construction materials never provided or for which payment was not properly credited, and/or for work billed but unperformed. *Cf.* ECF No. 279 at 3 (asserting that improper billing of "more than $114,000 for work [Plaintiff] did not perform" as damages "expressly available under Count IX . . . for breach of the 1997 CCA"). The Court reminds the parties of their obligations to provide clarification and specificity in their itemization of alleged damages prior to the December 5, 2017 Final Pretrial Conference.

## II. RELEVANT FACTUAL AND PROCEDURAL HISTORY

The extensively documented factual and legal history in this case arising from disputes between the parties with regard to (a) construction material purchases and (b) sub-contracted construction of housing in Defendants' multi-duplex residential developments – Timberlake Village (hereafter "Timberlake") and Cedar Creek – located in Garrett County, Maryland was set forth by this Court in its Summary Judgment Opinion, ECF No. 166, and has been summarized in relevant part in several lengthy Opinions thereafter, including this Court's February 23, 2017 Memorandum Opinion granting Plaintiff's Motion for Judgment Pursuant to Federal Rule of Civil Procedure 52(c), ECF No. 245.

The underlying contract documents include the 1997 CCA, and five (5) 84 Lumber "Subcontractor Agreement/Scope of Work" forms (the "Subcontractor Agreements") for three Timberlake projects (Units 8, 11 and 12) and two Cedar Creek projects (Units 1 and 2). Subcontract Agreement paragraph 15 contained, among other things, 84 Lumber's "guarantee" that the work would conform to specifications, comply with laws, and be free from defects in workmanship and materials. Paragraph 15 limited 84 Lumber's "liability hereunder" to the "extent of 84's negligence" and its obligations to "repair or replacement of any defective or nonconforming [w]ork." Mortimer agreed that 84 Lumber was "in no event" liable "for any consequential, indirect, exemplary or punitive damages of any type in connection with any claim under this paragraph." And the paragraph closed with a form language disclaimer of any further express or implied warranty, including warranty of merchantability or fitness for a particular purpose. Id.

For a full discussion of the prior procedural history, including the Court's holdings following a November, 2016 bench trial on Defendants' theories (both prior and last-minute, despite considerations of waiver or estoppel) of tort liability, *see* ECF No. 245. The Court observes that the limited bench trial was held *because* the Court's determination of the enforceability of Paragraph 15 as to Subcontract Contract claims "related to/flowing from 'defects in workmanship or materials'" rendered a "determination of Defendants' ability to make out the elements of their tort-based counterclaims" more critical. ECF No. 245 at 2-3 (citing the October 11, 2016 Memorandum Opinion on Contractual Damage Limitations (the "Damage Limitations Opinion"), ECF No. 214). The relevant claims documents are:

Plaintiff's April, 2011 Complaint, ECF No. 1, and its claim for breach of contract under the 1997 CCA owing to nonpayment for goods/supplies delivered. Plaintiff's asserted entitlement to attorney's fees was assessed in the March 30, 2016 Memorandum Opinion on the Parties' Multiple Motions and Cross-Motions for Summary Judgment (the "Summary Judgment Opinion") at 4 n. 4, and 6, ECF No. 166. *See also* ECF N0. 279 at 3, n. 1 (noting that Plaintiff also lists attorneys' fees as a category of damages and has no contractual entitlement thereto).

The Defendants' Second Amended Counterclaim, ECF No. 44, and its remaining claims for breach of contract as to each of five (5) separately subcontracted Timberlake (8, 11, 12) and Cedar Creek (1, 2) units (Counts IV-VIII), and breach of contract as to the 1997 CCA (Count IX). Defendant's asserted entitlement to (a) lost profits and (b) damages flowing from tort liability and thus outside the contractual damage limitations of Subcontract Paragraph 15 have been addressed in ECF No. 214 and ECF No. 245, respectively.[2]

---

[2] The Court again directs Defendants' attention to its February 23, 2017 Memorandum Opinion granting Plaintiff's Motion for Judgment Pursuant to Federal Rule of Civil Procedure 52(c), ECF

4

## III. ANALYSIS

### A. Preclusion of Evidence for Attorneys' Fees

As Plaintiff notes in its three-page summation of the law on this issue, there is generally no entitlement to attorney's fees in a civil claim absent the parties' contractual agreement to the contrary or another exception, such as statutory provision, wrongful conduct resulting in third party litigation or malicious prosecution. *See* Plaintiff 84 Lumber Company, L.P.'s Memorandum in Support of its Motion in Limine to Preclude Testimony and Evidence of Defendants' Direct and Incidental Damages ("Plaintiff's Memo in Support"), ECF No. 272, at 3-4 (citing Maryland and District Court cases); *see also, e.g.*, Freedman v. Seidler, 194 A.2d 778 (Md. 19673) )("[I]n the absence of special circumstances or statutory requirement, counsel fees are not a proper element of damages in an action for breach of contract.").[3]

Defendants' response, which does not assert a present contractual or other entitlement to attorney's fees, but asserts a possible post-trial election to move for fees, is inadequate as noted above.[4]

---

No. 245. *Compare* Defendants' Second APS (ECF No. 268) (including substantial reiteration of *tort liability allegations,* as well as potentially-related but otherwise contractually-precluded damages, in its proposed "Material Facts to Be Offered at Trial").

[3] To the extent Plaintiff's Memo in Support, ECF No. 272, at 5-6 may be read to imply Plaintiff's entitlement to attorney's fees under contractual language of an applicable CCA, the Court pauses to correct any such implication and to direct Plaintiff to the Court's prior determinations that the governing CCA is the 1997 CCA and that its provisions pertain to "attorneys fees and costs for all mechanic's liens field", language which was subsequently broadened in an inapplicable CCA. *See supra.*

[4] *See* ECF No. 279 at 3 (asserting that Motion is moot and should be denied where Defendants list fees as damages but express intent not to introduce witnesses or documents to establish the

5

## B. Preclusion of Evidence of Certain "Direct" and "Incidental" Damages

The Court sees little point to yet another reiteration of the provisions of Paragraph 15, the relevant case law, and application of that law to the facts of the case as they relate to the scope of damages for which Plaintiff may be liable under the remaining purely contractual claims. Defendants have been intent on disregarding this Court's holdings in favor of presenting repetitious or novel but patently contra-indicated theories and pleadings.[5] The Court therefore refers the parties to the summation of prior relevant rulings provided in ECF No. 272 at 2-4, 8-10, and to the Court's observations and holdings – during 2016 and 2017 – in, *e.g.*, ECF No. 166 at 12, 16; ECF No. 214 at 2, 8, 20, 22-24;[6] and ECF No. 245. The Court pauses only to further observe that the theory now before it was not raised in any of the multiple status conferences or exchanges of pleadings. *See, e.g.*, Defendants' Memorandum of Law Regarding Damages Available Under Contract Claims, ECF No. 201 (asserting, *e.g.*, remaining availability of lost profits as "too difficult to strictly categorize" within the excluded-damages language of Paragraph 15).

The Court will address Defendants' new theory that damages which it previously asserted as

---

amount). The Court notes that Defendants have entered no further amendment of their Pretrial Statement nor any related Stipulation.

[5] *See* ECF No. 272 (correctly referring to Defendants' "redundant motions practice").

[6] In particular, the Court again directs Defendants to this summation: "In other words, 84 Lumber would not be a guarantor of loss beyond the direct cost of meeting the warranted standard, and other losses incurred by delay or failure of contract performance remained with Defendants – a risk allocation that was presumably reflected in the contract price." ECF No. 214 at 20. And it directs the parties to its further observation that "as noted below, the Subcontractor Agreement consequential damage limitations do not exclude direct damages under the contract for defects or delays in performance" because Defendants are entitled to "recover the value of the thing promised, [which] is equivalent to a claim [for] the value of repair or replacement under the warranty". *Id.* at 22, 24.

6

available via either tort liability or unenforceability of the contractual damages limitations clause are now – subsequent to this Court's decisions precluding their availability under either premise – nonetheless available as something other than "consequential, indirect, exemplary or punitive damages of any type". Defendants contend, despite this Court's Rule 52(c) determination in Plaintiff's favor, that their damages may still include loan interest payments, property taxes, and other "carrying costs" because such damages are "direct" and "incidental" and therefore outside Paragraph 15's contract-claim limitations.

To render this holding most simply, the Court notes that a case which was first cited by Defendants, and has been repeatedly cited by Defendants thereafter, and which this Court has discussed in some detail in prior Opinions, reflects unambiguously the Fourth Circuit's understanding and definition of the plaintiff's "direct" loss to be "the difference in value" between the "as warranted" and "actual" item.[7] And its further understanding that the plaintiff's "incidental . . . damages" constituted (*i.e.*, were a type or subset of) "indirect" loss. *See* Waters v. Massey-Ferguson, Inc., 775 F.2d 587, 590-91 (4th Cir. 1985) (noting that plaintiff "now sought

---

[7] *See supra* n. 5. *See also* ECF No. 245 at 25-26 ("Plaintiff's alleged – and substantially evidenced – protracted failure to successfully repair construction defects to the standard guaranteed under the Subcontract Agreements' Paragraph 15 gives rise to liablity for breach of contract."); *id.* at n. 25 ("Both parties have acknowledged that the cost of bringing the projects into conformity with warranted standards is substantial. Moreover, *an alternative measure of damages* from breach of a warranty concerning the standard of promised contract performance, including construction, *is the difference in fair market value on the contemplated date between the performance as warranted and as delivered.*") (emphasis added).

If Defendants intend to imply the Court's holding on contractual damage limitations, ECF Nos. 214-15, to have encompassed the damages now alleged, they err. *See* ECF No. 279 at 4, n. 2. *Cf.* ECF No. 214 at 22 ("*[A]s noted below*, the Subcontract Agreement consequential damage limitations do not exclude direct damages under the contract for defects or delays in performance.") (emphasis added); *id.* at 24 ("[T]o the extent Defendants seek to *recover the value of the thing promised*, that is equivalent to a claim for the value of repair or replacement under the warranty, which is not barred by the damages limitation provision.") (emphasis added).

7

compensation for the direct damages incurred in purchasing a deficient product and more important, compensation for *the incidental and consequential damages* that he had suffered in substitute planting expenses and in lost profits on his crop" . . . "[t]he jury was sufficiently persuaded by the evidence to award him [compensation] for *these indirect losses* in addition to its award . . . for the difference in value . . ."). Plaintiff cannot remove - as either "direct" or "incidental" loss - loan payments, taxes, and carrying costs, from the scope of a contractual damage provision excluding "consequential, indirect, exemplary or punitive damages of any type".[8]

In sum, evidence of non-recoverable damages is appropriately excluded, as the legal standard for its admission has not been met. *See* ECF No. 272 at 3-6, F.R.E. 401 (defining relevant evidence as contributing to the determination of a "fact that is of consequence"), F.R.E. 402.[9] The Court concurs with Plaintiff's observation that "the parties should be focused on streaminlining issues to allow for efficient use" of their trial time, which will be limited. ECF No. 272 at 2. *Cf. supra* n. 1.

## IV. CONCLUSION

---

[8] *Cf.* ECF No. 279 at 4 (categorizing "incidental" damages as distinct from other two categories of "consequential" and "indirect" damages, and following with assertion that claimed damages are "incidental . . . recoverable under the Subcontract Agreements"). Defendants' second argument - citation to the Maryland UCC inclusion of incidental damages and other reasonable expenses as recoverable and its asserted analogy to this case - patently ignores the parties' voluntary contractual damage limitations. *See id.* at 5. And their third - citation to cases for the proposition that interest is an incidental damage – does not further establishment of a claim that incidental damage is not contractually excluded by the provisions of Paragraph 15. *See id. See also* Plaintiff's Reply Brief in Support of Motion in Limine, ECF No. 284 at 3-4 (noting distinguishability of cases cited by Defendants).

[9] *Cf.* ECF No. 279 at 2-3 (endeavoring to assume away the issue of precluded damages' "relevance" in its presentation of the applicable standard of review)

8

For the reasons set forth above, the Court will grant Plaintiff's Motion in Limine, ECF No. 271, as to those damages listed in Defendant's June 15, 2017 Second Amended Pretrial Statement, ECF No. 268, as "B. Additional Direct and Incidental Damages" items 2 through 5, and "C. Attorney's Fees". It will deny said Motion as to the damages listed as "B.1 Overcharges on Timberlake 13". An appropriate Order will follow.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Counsel of record

Dated: November 8, 2017